1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-filed 12/06/07**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>UNITED STATES VOTING MACHINES, INC.,<br><br>Debtor. | Case Number C 05-01281 JF<br><br>ORDER[1] AFFIRMING ORDER OF THE BANKRUPTCY COURT<br><br>[re: docket no. 62] |
| UNITED STATES VOTING MACHINES, INC.,<br><br>Appellant,<br><br>v.<br><br>JUDITH POWELSON,<br><br>Respondent. | |

     Appellant United States Voting Machines, Inc., ("USVM") appeals an order of the Bankruptcy Court granting the motion of Respondent Judith Powelson ("Powelson") to dismiss the underlying bankruptcy proceeding. For the reasons stated below, this Court will affirm the order of the Bankruptcy Court.

---

[1]    This disposition is not designated for publication and may not be cited.

1

**I. BACKGROUND**

2      In 1996, United States Voting Machines, Inc. ("USVM"), a Colorado business venture,

3  filed for corporate bankruptcy in the District Court of Colorado under Chapter 7 of the

4  Bankruptcy Code, 11 U.S.C. § 701 *et seq*. ("Chapter 7").  A trustee was appointed to liquidate the

5  company's assets.  Kenneth Malpass ("Malpass"), USVM's chief executive officer and 93%

6  owner, filed a claim for unpaid wages in that case.  After liquidating USVM's assets and paying

7  all creditors, the trustee of USVM's Colorado bankruptcy estate had $79,000 remaining.[2]

8      Several months later Malpass himself filed for bankruptcy protection under Chapter 13 of

9  the Bankruptcy Code, 11 U.S.C. § 1301 *et seq*. ("Chapter 13").  On October 20, 2004, Malpass's

10  individual bankruptcy case was dismissed.  On May 23, 1997, while USVM's Colorado

11  bankruptcy was pending, Malpass individually executed a promissory note for $250,000 in favor

12  of Powelson in connection with another business venture.  The note was secured with Malpass's

13  interest in USVM's Colorado bankruptcy estate and other proceeds of litigation.

14      In 1999, Powelson commenced a state court action against Malpass in Boulder, Colorado,

15  to recover on the promissory note.[3]  Additional named defendants were the trustee of USVM's

16  bankruptcy estate and Mark Voting Systems, an entity that acquired the assets from the USVM

17  bankruptcy.  The trustee of USVM's bankruptcy estate agreed to relinquish the Colorado funds in

18  his possession to the Colorado state court and was dismissed from the state court litigation.

19      On February 24, 2003, Malpass filed another Chapter 13 petition in this district, which

20  filing automatically stayed the pending state court proceeding in Colorado.  Powelson filed a

21  claim in the California bankruptcy case and sought relief from the automatic stay in order to

22  resume litigation in Colorado and to recover the funds in the possession of the Colorado state

23

24

25  _____

26      [2]      The amount in dispute is now $84,653.18; the increase reflects accumulated
    interest.  This amount is hereinafter referred to as the Colorado funds.

27      [3]      *Powelson v. Weinman, Malpass et al.*, Boulder (Colorado) County District Court
28  # CV 663.

2

1    court.[4]

2    On October 28, 2003, one day before the hearing on Powelson's motion for relief from the

3    automatic stay, Malpass filed a second corporate Chapter 7 bankruptcy case on behalf of USVM

4    in this district, disputing Powelson's claim for the Colorado funds.  On or about February 1, 2004,

5    Carol Wu ("Wu"), the trustee of USVM's estate in the California Chapter 7 case, gained

6    possession of the Colorado funds previously in possession of the state court in Colorado.  On or

7    about February 10, 2004, Powelson commenced litigation against Wu in this district, asserting

8    various rights in the funds.

9    On January 6, 2005, United States Bankruptcy Judge Marilyn Morgan dismissed USVM's

10    California Chapter 7 bankruptcy case pursuant to the Bankruptcy Code, 11 U.S.C.     § 707(a).

11    The Bankruptcy Court held that:

12            Based on a totality of the circumstances, the court concludes that
            dismissal of USVM's petition is appropriate.  This is essentially a
13            two party dispute. . . . [T]he reasonable inference of the facts . . . is
            that the Colorado chapter 7 trustee relinquished possession of the
14            funds to the state court because the funds either belong to Malpass
            on his wage claim in USVM's earlier bankruptcy case or should go
15            to Powelson in her state court suit on the note.  In effect, the
            Colorado trustee recognized that the funds were distributable to
16            Malpass but left to the state court the question of whether Malpass
            or Powelson had the right to receive the funds under the note.
17            Further, the continuation of this case simply delays the resolution of
            the dispute between Malpass and Powelson and wastes precious
18            judicial resources by requiring this court to enter a dispute that is
            already being litigated in Colorado.  In light of these unique factual
19            circumstances, dismissal is appropriate.

20    *In re United States Voting Machines, Inc.*, C-03-56975 MM, slip op. a 4-5 (Bankr. N.D. Cal.

21    January 6, 2005) ("Bankruptcy Court Decision")  The Bankruptcy Court also directed Wu to

22    return to the Colorado state court the funds that she obtained from that court.  *Id.* at 5.

23    On March 11, 2005, USVM moved for reconsideration of the dismissal, which was denied

24    on March 14, 2005.  On March 30, 2005, USVM filed notice of the instant appeal.  USVM did not

25    request a stay of the Bankruptcy Court's order directing Wu to return the Colorado funds to the

26

27            ───────────────

28            [4]        In September, 2004, Malpass's individual California Chapter 13 case was
    dismissed.

3

1    Colorado state court.  As a result, on May 18, 2005, Wu returned the funds.  The Colorado court

2    subsequently dispersed the funds to Powelson and another creditor.  Respondent's Brief at 8.

3         USVM filed its notice of appeal on March 30, 2005.  Following briefing, which was

4    delayed pending the outcome of the Colorado case, the Court heard oral argument on November

5    30, 2007.

6                              **II.  LEGAL STANDARD**

7         The District Court reviews the Bankruptcy Court's findings of fact for clear error and its

8    conclusions of law de novo. *See In re Lazar*, 83 F.3d 306, 308 (9th Cir.1996); see also Fed. R.

9    Bankr.P. 8013 ("Findings of fact ... shall not be set aside unless clearly erroneous, and due regard

10   shall be given to the opportunity of the bankruptcy court to judge the credibility of the

11   witnesses."). "A finding of fact is clearly erroneous when after reviewing the evidence we are left

12   with the definite and firm conviction that a mistake has been committed." *In re Arnold and Baker*

13   *Farms*, 177 B.R. 648, 653 (9th Cir.BAP1994).

14                              **III.  DISCUSSION**

15        On appeal, USVM argues that the Bankruptcy Court erred in finding that the Chapter 7

16   action should be dismissed "for cause" pursuant to Bankruptcy Code § 707(a).  USVM argues

17   additionally that Powelson lacked standing to bring the motion to dismiss.

18   **A.  § 707(a): for "cause"**

19        Section 707(a) states:

20        (a) The court may dismiss a case under this chapter only after notice and a hearing and
     only for cause, including-

21

22        (1) unreasonable delay by the debtor that is prejudicial to creditors;
          (2) nonpayment of any fees or charges required under chapter 123 of title 28; and

23        (3) failure of the debtor in a voluntary case to file, within fifteen days or such
          additional time as the court may allow after the filing of the petition commencing
     such case, the information required by paragraph (1) of section 521, but only on a

24   motion by the United States trustee.

25   11 U.S.C. § 707(a).

26        The Bankruptcy Court relied upon *In re Padilla*, 222 F.3d 1184 (9th Cir. 2000) in

27   determining of whether to dismiss the bankruptcy action pursuant to § 707(a).  *"Padilla*

28   prescribes a two-part inquiry:  First, the court must consider whether the circumstances asserted to

4

1  constitute 'cause' are 'contemplated by any specific Code provision applicable to Chapter 7

2  petitions.' If the asserted 'cause' is contemplated by a specific Code provision, then it does not

3  constitute 'cause' under § 707(a).  If, however, the asserted 'cause' is not contemplated by a

4  specific Code provision, then we must further consider whether the circumstances asserted

5  otherwise meet the criteria for 'cause' for discharge under § 707(a)."  *In re Sherman*, 491 F.3d

6  948, 969 (9th Cir. 2007)(citations omitted).

7          Powelson moved to dismiss the bankruptcy action as a "bad faith" claim pursuant to        §

8  707(a).  The Bankruptcy Court, citing *Padilla*, held that the action could not be dismissed for "bad

9  faith" under § 707(a), but that it could be dismissed for "cause."[5]  The Bankruptcy Court

10 purposefully looked to the totality of circumstances, noting that bad faith was not irrelevant to its

11 analysis.

12         USVM argues on appeal that the circumstances relied upon by the Bankruptcy Court for it

13 dismissal order in this case were insufficient.  USVM argues that its case is similar to *In re*

14 *Sherman,* 491 F.3d at 948.  In *Sherman*, the party moving to dismiss a Chapter 7 action for

15 "cause" pursuant to § 707(a) alleged, *inter alia,* that (1) the opposing party had used the

16 bankruptcy proceeding as a refuge from another court's judgment, and (2) the bankruptcy filing

17 was part of a "scorched earth policy" (transferring funds from one creditor to another to avoid

18 payment to a third creditor.).  *Id.* at 969.  The Ninth Circuit held that each of these allegations

19 were covered by other Bankruptcy Code provisions, namely 11 U.S.C. § 362 and 11 U.S.C. § 547,

20

21

22         [5] *Padilla* was superseded by statute enacted April 20, 2005.  Pursuant to the Bankruptcy
   Abuse Prevention and Consumer Protection Act (BAPCPA) which specifically lists a bad-faith
23 petition example of abuse as warranting dismissal of Chapter 7 case, the bankruptcy court may
   now dismiss a case under the statute governing dismissal or conversion of Chapter 7 cases even
24 if the Bankruptcy Code provides another remedy for debtor's "bad faith" acts.  See *In re*
   *Mitchell*, 357 B.R. 142, 154 n.11 (C.D.Cal. 2006) ("Before the enactment of the BAPCPA in
25 *Neary v. Padilla* (*In re Padilla*), the Ninth Circuit concluded that 'bad faith as a general
   proposition does not provide "cause" to dismiss a Chapter 7 petition under § 707(a)' because
26 Chapter 7 did not specifically include a requirement of "good faith" as do Chapters 11 and 13.
   However in light of the addition of § 707(b)(3) to the Bankruptcy Code, a debtor's bad faith now
27 clearly constitutes grounds for dismissal of a Chapter 7 case.")

28

5

1  respectively, and therefore, under the reasoning of *Padilla*, could not be considered pursuant to §

2  707(a).  *In re Sherman*, 491 F.3d at 971-72.

3       Powelson argued in support of her motion to dismiss that Malpass's Chapter 7 action was

4  for the "sole purpose of thwarting Ms. Powelson's efforts to collect the funds from the court in

5  Colorado," and resulted in the transfer of funds from the Colorado court to the bankruptcy court.

6  USVM argues that the Bankruptcy Court's reliance upon the of "totality of circumstances" simply

7  is another way of saying "bad faith built on shifting funds around and avoiding another court's

8  jurisdiction by filing bankruptcy proceedings."

9       However, it is clear from the review of the instant case the Bankruptcy Court did look to

10  the totality of circumstances.  While observing that bad faith was not irrelevant to its analysis, the

11  Bankruptcy Court correctly held that bad faith alone even if established was insufficient to support

12  dismissal.  The Bankruptcy Court carefully considered all of the evidence, including the evidence

13  from Malpass's individual Chapter 13 case, and reasonably concluded that the case before it

14  essentially was a two-party dispute as to whether Malpass or Powelson had the right to receive the

15  funds under the note.  The Bankruptcy Court further found that continuation of the USVM's

16  bankruptcy case would waste precious judicial resources because it would require it to involve

17  itself in a dispute already being fully litigated in Colorado.  The Bankruptcy Court thus did not

18  abuse its discretion in granting Powelson's motion to dismiss.

19  **B.  Standing**

20       Alternatively, USVM asserts that because Malpass, not USVM, owed a debt to Powelson,

21  the Bankruptcy Court erred when it found that Powelson had standing to bring the action to

22  dismiss USVM's Chapter 7 bankruptcy action.  A party has standing as a creditor to challenge a

23  bankruptcy action if:

24       [The party can] demonstrate that "(1) it has suffered an 'injury in fact' that is (a)
         concrete and particularized and (b) actual or imminent, not conjectural or

25       hypothetical; (2) the injury is fairly traceable to the challenged action of the
         defendant; and (3) it is likely, as opposed to merely speculative, that the injury will

26       be redressed by a favorable decision."

27  *In re Sherman*, 491 F.3d at 957.

28       The Bankruptcy Code's definition of "creditor" includes an "entity that has a claim

6

1   against the debtor that arose at the time of or before the order for relief concerning
    the debtor."11 U.S.C. § 101(10)(A). . . .
2   (A) right to payment, whether or not such right is reduced to judgment, liquidated,
    unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,
3   equitable, secured, or unsecured; or
    (B) right to an equitable remedy for breach of performance if such breach gives rise
4   to a right to payment, whether or not such right to an equitable remedy is reduced
    to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured,
5   or unsecured.

6   *In re Sherman*, 491 F.3d at 958.

7        Here, the Bankruptcy Court's decision implies that Malpass *is* USVM when it says that

8   "[t]his is essentially a two party dispute."  Bankruptcy Court Decision, slip op. at 4.  The

9   Bankruptcy Court based that determination on its reading of the decision both in Malpass's

10  individual Chapter 13 case and in USVM's Colorado Chapter 7 case.  In fact, Malpass is the CEO

11  and 93% owner of a bankrupt non-functioning company.  Malpass's wage claim is the only claim

12  to the sole remaining asset of USVM, the $79,000.  Most importantly, the note to Powelson was

13  secured by Malpass's interest in USVM's Colorado bankruptcy estate and other proceeds of

14  litigation.  The Bankruptcy Court's implied factual determination that Malpass's debt to Powelson

15  makes Powelson a creditor of USVM in these circumstances thus is not clearly erroneous.

16                               **III.  ORDER**

17       Good cause therefor appearing, IT IS HEREBY ORDERED that the order of the

18  Bankruptcy Court is AFFIRMED.

19

20  IT IS SO ORDERED.

21

22  DATED: December 6, 2007

23                                        _____
24                                        JEREMY FOGEL
                                          United States District Court
25

26

27

28

                                          7

Case No. C 05-01281 JF
ORDER AFFIRMING THE DECISION OF THE BANKRUPTCY COURT
(JFLC3)

1    This Order has been served upon the following persons:

2    Mariam S. Marshall, mariam_m@pacbell.net,

3
     Philip J. Nicholsen, nicholsenlaw@yahoo.com,
4
     Starrett Paul, paul@starrettlaw.com,
5
6    Richard Seim, mail@seimr.com,

7    Nanette Dumas
     Office of the U.S. Trustee
8    280 S 1st St. #268
9    San Jose, CA 95113-0002

10   Marilyn Morgan
     US Bankruptcy Court
11   280 Sourt First Street
12   Room 3035
     San Jose, CA 95113
13
14   USBC Manager-San Jose
     US Bankruptcy Court
15   280 South First Street
     Room 3035
16   San Jose, CA 95113

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 05-01281 JF
ORDER AFFIRMING THE DECISION OF THE BANKRUPTCY COURT
(JFLC3)